# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
### (*Ocala Division*)

CASE NO.  5:18-cv-00324-PGB-PRL

**CLASS ACTION**

MARY BETH HEINERT and RICHARD H.
SCHULTZ, JR., on behalf of themselves and
all others similarly situated,

Plaintiffs,

v.

BANK OF AMERICA, N.A., PERRY
SANTILLO, CHRISTOPHER PARRIS,
PAUL ANTHONY LAROCCO, JOHN
PICCARRETO, and THOMAS BRENNER,

Defendants.

**DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS THE PLAINTIFFS'
AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

ARGUMENT ............................................................................................................ 6

I.      PLEADING STANDARD ................................................................... 6

II.     THE COURT SHOULD DISMISS PLAINTIFFS' AIDING AND
ABETTING CLAIMS (COUNTS I AND II) ....................................... 7

        A.    Plaintiffs' Aiding and Abetting Claims Fail Because They Do Not
Allege That Bank of America Had Actual Knowledge of the
Underlying Scheme. ................................................................. 8

               1.    Plaintiffs' allegations of suspicious activities and "red
flags" are insufficient to state a claim. ........................... 9

               2.    Plaintiffs' new allegations do not establish actual
knowledge. .................................................................. 12

               3.    Plaintiffs' allegations of actual knowledge lack sufficient
particularity. ............................................................... 15

        B.    Plaintiffs' Aiding and Abetting Claims Fail Because They Do Not
Allege That Bank of America Substantially Assisted the
Commission of the Underlying Fraud. ..................................... 16

III.    THE COURT SHOULD DISMISS PLAINTIFFS' COMMON LAW
CONSPIRACY CLAIM (COUNT III) ............................................... 18

        A.    Plaintiffs' Civil Conspiracy Claim Fails Because They Do Not
Identify an Underlying Tort That Bank of America Conspired to
Commit. ................................................................................ 18

        B.    Plaintiffs' Civil Conspiracy Claim Fails Because They Do Not
Allege That Bank of America Entered into an Agreement in
Furtherance of an Underlying Tort. ......................................... 19

        C.    Plaintiffs' Civil Conspiracy Claim Fails Because They Do Not
Allege That Bank of America Committed an Overt Act in
Furtherance of an Underlying Tort. ......................................... 21

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alhassid v. Bank of Am., N.A.*,
  60 F. Supp. 3d 1302 (S.D. Fla. 2014) .................................................................... 20

*Am. United Life Ins. Co. v. Martinez*,
  480 F.3d 1043 (11th Cir. 2007) ............................................................. 7, 18, 19, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 6, 7, 15

*Behrman v. Allstate Life Ins. Co.*,
  178 F. App'x 862 (11th Cir. 2006) ................................................................... 18, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 13

*Chang v. JPMorgan Chase Bank, N.A.*,
  841 F.3d 914 (11th Cir. 2016), *opinion vacated and superseded on reh'g*, 845 F.3d
  1087 (11th Cir. 2017) ............................................................................................ 13

*Chang v. JPMorgan Chase Bank, N.A.*,
  845 F.3d 1087 (11th Cir. 2017) ............................................................................ 13

*Daccache v. Quiros*,
  2018 WL 2248409 (S.D. Fla. May 15, 2018) ........................................................ 11

*Davila v. Delta Air Lines, Inc.*,
  326 F.3d 1183 (11th Cir. 2003) ....................................................................... 6, 15

*Durham v. Bus. Mgmt. Assocs.*,
  847 F.2d 1505 (11th Cir. 1988) .............................................................................. 7

*Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*,
  79 So. 3d 855 (Fla. Dist. Ct. App. 2012) .............................................................. 18

*Freeman v. Dean Witter Reynolds, Inc.*,
  865 So. 2d 543 (Fla. Dist. Ct. App. 2003) ............................................................ 17

*Gellert v. Richardson*,
  1995 WL 856715 (M.D. Fla. July 24, 1995) ........................................................ 20

*Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*,
  2015 WL 12862724 (S.D. Fla. Aug. 20, 2015) ..................................................... 20

*Groom v. Bank of Am.*,
  2012 WL 50250 (M.D. Fla. Jan 9, 2012) ............................................... 8, 12, 16, 17

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Hammer v. Lee Memorial Health System*,
  2018 WL 3707832 (M.D. Fla. Aug. 3, 2018) ........................................................... 21

*Honig v. Kornfeld*,
  2018 WL 4502174 (S.D. Fla. Aug. 20, 2018) ......................................................... 20

*In re Ernie Haire Ford, Inc.*,
  459 B.R. 824 (Bankr. M.D. Fla. 2011) ................................................................... 19

*In re Palm Beach Fin. Partners, L.P.*,
  488 B.R. 758 (S.D. Fla. 2013) ..................................................................... 9, 12, 15

*Lamm v. State Street Bank & Trust*,
  749 F.3d 938 (11th Cir. 2014) .................................................................................. 9

*Lamm v. State Street Bank & Trust*,
  889 F. Supp. 2d 1321 (S.D. Fla. 2012) ............................................... 12, 15, 16, 17

*Lawrence v. Bank of Am., N.A.*,
  2010 WL 3467501 (M.D. Fla. Aug. 30, 2010), *aff'd*, 455 F. App'x 904 (11th Cir.
  2012) ................................................................................................................. passim

*Lawrence v. Bank of Am., N.A.*,
  455 F. App'x 904 (11th Cir. 2012) ..................................................................... passim

*McCants v. State*,
  587 So. 2d 673 (Fla. Dist Ct. App. 1991) ............................................................... 19

*McElrath v. ABN AMRO Mortg. Grp., Inc.*,
  2012 WL 463893 (S.D. Fla. Feb. 13, 2012) .......................................................... 22

*Moecker v. Bank of Am., N.A.*,
  2013 WL 12159056 (M.D. Fla. Oct. 21, 2013) ................................................. 7, 17

*O'Halloran v. First Union Nat'l Bank of Fla.*,
  350 F.3d 1197 (11th Cir. 2003) ............................................................................. 18

*Perlman v. Wells Fargo Bank, N.A.*,
  559 F. App'x 988 (11th Cir. 2014) .................................................................. 8, 11, 14

*Platinum Estates, Inc. v. TD Bank, N.A.*,
  2012 WL 760791 (S.D. Fla. Mar. 8, 2012) ............................................................ 16

*Regions Bank v. Kaplan*,
  2014 WL 5088889 (M.D. Fla. Sept. 30, 2014) ...................................................... 19

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Richter v. Wells Fargo Bank NA*,
  2015 WL 163086 (M.D. Fla. Jan. 13, 2015) ............................................................ 17

*Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*,
  121 F. Supp. 3d 321 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016) ............................ 22

*Russo v. Fink*,
  87 So. 3d 815 (Fla. Dist. Ct. App. 2012) ............................................................ 20

*S.E.C. v. Levin*,
  2013 WL 5588224 (S.D. Fla. Oct. 10, 2013) ............................................................ 7

*Tucci v. Smoothie King Franchises, Inc.*,
  215 F. Supp. 2d 1295 (M.D. Fla. 2002) ............................................................ 21

*Wiand v. Wells Fargo Bank, N.A.*,
  938 F. Supp. 2d 1238 (M.D. Fla. 2013) ............................................................ passim

**Rules**

Fed. R. Civ. P. 9(b) ............................................................ 7

Defendant Bank of America, N.A., respectfully moves this Court to dismiss Plaintiffs'

Amended Complaint ("AC," ECF 45) under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

On their second attempt, Plaintiffs still have not stated a claim against Bank of

America. Notwithstanding extensive precedent in this Circuit disavowing such actions, this

case remains a misguided attempt to hold Bank of America responsible for the misdeeds of

its customers. The Amended Complaint alleges that Perry Santillo, Christopher Parris, Paul

Anthony LaRocco, John Piccarreto, and Thomas Brenner (the "Individual Defendants") induced

individuals to invest in sham companies and, in typical Ponzi scheme fashion, used the money of

later investors to pay off earlier investors. The Individual Defendants had a "personal and

business banking relationship" with Bank of America. Plaintiffs allege that the Individual

Defendants engaged in atypical transactions that should have raised red flags at the Bank, and

therefore attempt to hold Bank of America liable for aiding and abetting fraud and breach of

fiduciary duty, and conspiracy. Plaintiffs' allegations do not come close to meeting the high

pleading burden of those claims.

Under Florida law, banks cannot be held liable for aiding and abetting fraud or breach of

fiduciary duty absent actual knowledge and substantial assistance of the underlying fraud.

Courts in the Eleventh Circuit have explicitly and repeatedly rejected liability for banks accused

of overlooking red flags or authorizing suspicious transactions. Such conduct does not give rise

to actual knowledge or constitute substantial assistance.

In the Amended Complaint, Plaintiffs allege for the first time that one Bank employee

had a particularly close relationship with the Individual Defendants and accepted a cash payment

from the Individual Defendants over a decade after the relationship began. Tellingly, Plaintiffs

do not even allege that this employee had actual knowledge of the scheme. Moreover, Plaintiffs

1

do not identify any affirmative act that this employee took to further the alleged fraud, and the employee's mere inaction does not qualify as substantial assistance where the aider and abettor had no duty to act.

Plaintiffs' conspiracy claim is improper because it does not allege the basic elements of a conspiracy. Plaintiffs never identify the underlying tort that Bank of America is alleged to have conspired to commit. Further, Plaintiffs do not adequately allege any agreement between Bank of America and the Individual Defendants, nor do they provide facts that suggest that Bank of America entered into any such agreement. Rather, Plaintiffs admit that the alleged agreement occurred between an employee acting outside of the scope of her employment, and the allegations of her agreement are insufficient to meet Rule 9(b)'s pleading standard in any event. Finally, Plaintiffs fail to allege that Bank of America undertook any overt acts in furtherance of the conspiracy and suggest only that Bank of America failed to stop others' conduct. Bank of America's inaction, however, is not an overt act.

For these reasons, and others set forth below, Bank of America respectfully requests that this Court dismiss the Complaint with prejudice as against Bank of America under Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL BACKGROUND

Plaintiffs, Mary Beth Heinert and Richard H. Schultz, Jr., allege that they were victims of a Ponzi scheme orchestrated by the Individual Defendants. (AC ¶ 1-2.) According to the Amended Complaint, the Individual Defendants used three companies, First Nationle Solutions, Percipience Global Corporation, and United RL Capital Services, to raise investments, used those funds to "pay off previous investors, and stole what was left to fund a jet-setting lifestyle[.]" (AC ¶ 3, 7.) Plaintiffs claim that the Individual Defendants relied on the "knowing and substantial assistance" of Bank of America in perpetrating their scheme. (*Id.* ¶ 5.)

In support of Plaintiffs' claim that Bank of America knew and assisted with the Individual Defendants' crimes, Plaintiffs point to "an intricate web of transfers" and "various sources" that led the Bank to "acquire[] knowledge that the Individual Defendants were engaging in fraudulent activity." (*Id.* ¶ 14.)  Among the "various sources" of "knowledge" are (i) low balances in the Individual Defendants' accounts (*id.* ¶ 71), (ii) large dollar transfers between related accounts (*id.*), (iii) rapid movement of funds between related accounts (*id.* ¶ 74), (iv) commingling of funds (*id.*), and "ultimate misappropriation of investor funds through personal accounts at Bank of America," (*id.*).  Plaintiffs admit that these "various sources" were "red flags which required Bank of America to investigate the accounts immediately." (*Id.*)

The Amended Complaint provides details on 19 examples of supposedly unusual transactions (*id.* ¶¶ 72-89), such as the following:

**Late-July 2014 Transactions**

81.    From July 21 to July 29, 2014, a First Nationle account at Bank of America received $233,000 from a single investor and $532,859 from six likely investors.

82.    That same week, the First Nationle account paid $480,000 to Santillo's Bank of America account, but received $370,000 from the same Santillo account on July 28, 2014.

83.    Also during this week, First Nationle paid $73,087 to likely redeeming investors, $75,500 in property taxes, $12,000 to another Bank of America account under the Individual Defendants' control, and transferred $440,500 to Lucian Development's Bank of America account, which had a previous balance of $3,560.

Based on the presence of what Plaintiffs call "suspicious account activity," they allege that Bank of America violated numerous applicable banking regulations, including a requirement to "know [your] customer," maintain an anti-money laundering compliance program, and conduct customer due diligence (none of which form the basis of Plaintiffs' claims in this case).

(*Id.* ¶¶ 90-93.)  Yet, contradicting themselves, Plaintiffs also allege that in 2014, the Individual

Defendants' opened a "series" of accounts, which "triggered an internal Bank of America

investigation."  (*Id.* ¶ 100.)  In furtherance of that investigation, "Bank representatives

questioned Parris by email, and then at an in-person meeting.  They interrogated him regarding

the unusual nature of the account openings, . . . and the atypical nature and amount of the

transfers being processed through the First Nationle accounts."  (*Id.* ¶ 101.)  Bank of America

"also questioned Santillo in person in connection with the Bank's investigation."  (*Id.* ¶ 102.)

The red flags allegedly continued into 2015, when the Individual Defendants "sought and

secured short-term, high interest loans from various non-traditional lending institutions," which

"automatically debit[ed] from various of the First Nationle accounts at Bank of America."  (*Id.* ¶

104.)  In 2016, due to "financial difficulties," the Individual Defendants' accounts "began

incurring negative balances on those Bank of America accounts linked to the short-term, high-

interest loans secured in 2015."  (*Id.* ¶ 109.)  Also in 2016, the Bank decided to "sever its

banking relationship" with the Individual Defendants and "advised [them] in writing" that the

Bank "would no longer conduct business with First Nationle[.]"  (*Id.* ¶ 110.)

Plaintiffs do not allege that Bank of America actually discovered, or even suspected, that

the Individual Defendants were engaged in a fraudulent scheme.  Instead, Plaintiffs rely on

conclusory assertions that Bank of America "acquired specific knowledge of the atypical and

suspicious nature of these transaction[s] when the Bank conducted an internal investigation in

2014" (*id.* ¶ 116) and "knowingly engaged in banking transactions that were directly related to

the scheme despite its knowledge of the Individual Defendants' wrongful conduct" (*id.* ¶ 117).

But Plaintiffs do not identify the link between Bank of America's alleged 2014 investigation and

the "specific knowledge" it allegedly acquired as a result.  Nor do Plaintiffs identify the specific

"wrongful conduct" that the Bank allegedly uncovered.

On the contrary, Plaintiffs themselves summarize their allegations of the Bank's

"knowledge" as follows: "There were many red flags that alerted Bank of America to illegal

conduct in the administration and use of investor funds, including, but not limited to, the rapid

and significant number of transfers in and out of the Bank of America accounts to effect

commingling of investor funds, and ultimately the misappropriation of investor funds through

personal Bank of America accounts belonging to the Individual Defendants."  (*Id.* ¶ 115.)

In addition, Plaintiffs allege that the Individual Defendants developed a close relationship

with a single branch manager located in Rochester, New York, Derline Cunningham.  (*Id.* ¶ 5.)

Cunningham allegedly served as the Individual Defendants' primary contact at the Bank

beginning in 2005, when they opened their first accounts.  (*Id.* ¶ 5.)  In 2016—more than a

decade later—Santillo and Parris "gave Derline Cunningham . . . a personal financial 'loan' to

assist with her own financial troubles.  Upon information and belief, Ms. Cunningham never

repaid the 'loan'."  (*Id.* ¶ 18.)  Plaintiffs allege upon information and belief that Santillo, Parris,

and Cunningham never expected that she would repay the loan.  (*Id.* ¶ 106.)  That same year,

when Bank of America decided to "sever" its relationship with the Individual Defendants,

Cunningham terminated her employment with the Bank and took a new position at the bank

where the Individual Defendants transferred the accounts.  (*Id.* ¶ 20.)

Plaintiffs acknowledge that Cunningham's acceptance of the "loan" from Parris and

Santillo "violated internal Bank policies and procedures regarding conflicts of interest, as well as

the Bank's code of ethics."  (*Id.* ¶ 107.)  She was "either prohibited" from receiving the loan or

obligated to disclose it to the Bank (*id.* ¶ 107), but indeed, she did not (*id.* ¶ 108).  Plaintiffs'

allege that Cunnningham's secrecy was intended to "preserv[e] her long-time relationship with the Individual Defendants—a relationship that continued when both Cunningham and the Individual Defendants transitioned to another bank."  (*Id.* ¶ 108.)

On June 25, 2018, Plaintiffs filed a purported class action complaint against the Individual Defendants and Bank of America on behalf of themselves and all other persons who invested in five companies that the Individual Defendants allegedly used in their scheme.  Bank of America moved to dismiss that complaint on July 31, 2018.  (ECF 33.)  On September 20, 2018, Plaintiffs filed an Amended Complaint (ECF 45), and this Court denied Bank of America's motion to dismiss as moot the following day (ECF 46).  Bank of America now moves to dismiss Plaintiffs' Amended Complaint.

## ARGUMENT

## I.    PLEADING STANDARD

On a Rule 12(b)(6) motion to dismiss, while a plaintiff's factual allegations are accepted as true, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (affirming dismissal for failure to state a claim).  Under Federal Rule of Civil Procedure 8(a), a complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  To determine whether a complaint is facially plausible, a court should not assume the truth of bare legal conclusions, rote recitals of elements of a cause of action, or "naked assertions devoid of further factual enhancement."  *See id.* (internal quotation marks, citations, and alterations omitted).  Rather, the allegations must give rise to "more than a sheer possibility that a defendant has acted unlawfully."  *Lawrence v.*

*Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012) (per curiam) (*quoting Iqbal*, 556 U.S. at 678).

Claims based in fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  Fraud claims must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Rule 9(b)'s particularity requirement "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks and citations omitted).  This standard applies to claims for aiding and abetting fraud, and conspiracy to commit fraud.  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (11th Cir. 2007) (dismissing conspiracy to commit fraud and aiding and abetting claims for failing to comport with Rule 9(b)); *S.E.C. v. Levin*, 2013 WL 5588224, at *6 (S.D. Fla. Oct. 10, 2013) (Rule 9(b) applies to a claim for aiding and abetting a primary actor's fraudulent conduct).

## II.     THE COURT SHOULD DISMISS PLAINTIFFS' AIDING AND ABETTING CLAIMS (COUNTS I AND II)

To state a claim for aiding and abetting either fraud or breach of fiduciary duty, a plaintiff must plead "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."  *Lawrence*, 455 F. App'x at 906.[1]  As explained below, Plaintiffs' aiding and abetting claims fail for two

---

[1] While Plaintiffs have alleged claims for aiding and abetting fraud and aiding and abetting breach of fiduciary duty, this court and the Eleventh Circuit routinely analyze aiding and abetting claims together.  *See Lawrence*, 455 F. App'x at 906 ("Given that all of Plaintiffs' claims are predicated on the theory of aiding and abetting, we need only consider whether Plaintiffs adequately alleged the elements of such a claim."); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1243-47 (M.D. Fla. 2013) (analyzing together and dismissing aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and aiding and abetting conversion claims); *see also Moecker v. Bank of Am., N.A.*, 2013 WL 12159056, at *6-8 (M.D. Fla. Oct. 21, 2013) (analyzing together and dismissing aiding and

independent reasons: (1) Plaintiffs have not adequately pleaded that Bank of America had actual knowledge of the underlying fraudulent scheme, and (2) Plaintiffs have not pleaded that Bank of America substantially assisted the underlying fraudulent scheme.

> ### A.    Plaintiffs' Aiding and Abetting Claims Fail Because They Do Not Allege That Bank of America Had Actual Knowledge of the Underlying Scheme.

There is extensive precedent articulating the very high standard that a plaintiff must meet to allege actual knowledge when a defrauded investor is suing a commercial bank for the misdeeds of its customers.  It is well established that "[i]n actions involving the liability of a bank for aiding and abetting its customer's Ponzi scheme, the second element, knowledge, will only be satisfied if the bank had 'actual knowledge of [the] fraudulent activities.'"  *Wiand*, 938 F. Supp. 2d at 1244; *see also Perlman*, *N.A.*, 559 F. App'x at 993 ("[W]hen a claim of aiding and abetting is asserted against a bank, the second element—knowledge—will only be satisfied if the plaintiff pleads facts demonstrating that the bank had 'actual knowledge' of the wrongdoings." (citation omitted)); *Lawrence v. Bank of Am., N.A.*, 2010 WL 3467501, at *3 (M.D. Fla. Aug. 30, 2010), *aff'd*, 455 F. App'x 904 (11th Cir. 2012) ("In order for a claim of aiding and abetting to survive a motion to dismiss, the plaintiff must allege that the defendant had actual knowledge of the underlying wrongdoing."); *Groom v. Bank of Am.*, 2012 WL 50250, *4 (M.D. Fla. Jan 9, 2012) ("In cases where a bank customer has perpetrated a fraudulent scheme, courts have widely held that the bank is not liable for aiding and abetting unless the bank has actual knowledge of its customer's wrongful activity.").

While actual knowledge may be shown by circumstantial evidence, courts "stress that the requirement is *actual knowledge*," thus the circumstantial evidence must "demonstrate that the aider-and-abettor actually knew of the underlying wrongs committed."  *Wiand*, 938 F. Supp. 2d

---

abetting conversion and aiding and abetting breach of fiduciary duty claims); *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 992-94 (11th Cir. 2014) (same).

at 1244.  "[E]vidence establishing negligence, *i.e.*, that a bank 'should have known,' will not

suffice."  *Id.* (citation omitted); *see, e.g.*, *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758,

773 (S.D. Fla. 2013) ("Plaintiffs factual narrative is, at best, merely a story of suspicious activity

that Plaintiff contends should have provided Defendant notice of the [P]onzi scheme.  As such,

this is not sufficient to satisfy the requirement of actual knowledge for aider and abettor

liability." (internal citation omitted)).  Plaintiffs' Amended Complaint continues to fall short of

this high burden for all of the following reasons.

> 1.  *Plaintiffs' allegations of suspicious activities and "red flags" are insufficient to state a claim.*

Courts in this Circuit repeatedly dismiss aiding and abetting fraud claims against

financial institutions where plaintiffs plead that patterns of suspicious activity existed that should

have put the bank on notice of fraud.  *See, e.g.*, *Lamm v. State Street Bank & Trust*, 749 F.3d

938, 950 (11th Cir. 2014) ("Alleging that a bank disregarded 'red flags' such as 'atypical

activities' on a customer's account is insufficient to establish knowledge." (citation omitted));

*Wiand*, 938 F. Supp. 2d at 1244-45 ("red flags . . . are insufficient to establish a claim for aiding

and abetting . . . although they may have put the banks on notice that some impropriety may have

been taking place[.]").  Plaintiffs' allegations of "red flags" and supposedly suspicious activity at

best establishes that Bank of America *should* have known that the Individual Defendants were

engaged in fraud, which is insufficient to allege liability for aiding and abetting under Eleventh

Circuit law.

As discussed *supra* pp. 3-4, Plaintiffs allege a series of atypical transactions.

Specifically, Plaintiffs allege that the Individual Defendants

- Transferred "hundreds of thousands of dollars into accounts with relatively small balances, no balances, or negative balances," followed by transfers of "the bulk of those funds to different accounts or to redeeming investors within the same day or week," (AC ¶ 8); and

- Opened a large number of business and personal accounts over a period of several years (*id.* ¶¶ 8, 14); and

- Commingled investor funds and misappropriated funds to pay off earlier investors and "fund the Individual Defendants' lavish lifestyles" (*id.* ¶ 158(c)); and

- Obtained high interest loans from other financial institutions that were debited against their Bank of America accounts, which led to negative account balances in 2016.  (*Id.* ¶ 104, 109.)

Even Plaintiffs acknowledge that these various transactions were merely red flags and "suspicious" conduct.  (*See* AC ¶ 74 (characterizing the "rapid movements of funds among accounts" and "commingling and ultimate misappropriation of investor funds through personal accounts at Bank of America," as "red flags"); *id.* ¶ 75 (listing examples of "suspicious" activity); *id.* ¶ 115 ("There were many red flags that alerted Bank of America to illegal conduct in the administration and use of investor funds, including, but not limited to, the rapid and significant number of transfers in and out of the Bank of America accounts to effect commingling of investor funds, and ultimately the misappropriation of investor funds through personal Bank of America accounts belonging to the Individual Defendants.").)

These types of allegations are not novel in the Eleventh Circuit.  Extensive case law holds that allegations such as these do not satisfy the "actual knowledge" standard required for aiding and abetting liability.  *Lawrence* is instructive.  There, the alleged fraudster maintained a personal banking account with Bank of America.  The Complaint alleged that the fraudster "made exceptionally large deposits," debited funds from his account to "fund personal and gambling expenditures," and "engaged in atypical business transactions, such as numerous wire transfers unrelated to any legitimate business activity."  *Lawrence*, 455 F. App'x at 905. Plaintiffs also alleged that the fraudster informed the Bank that his business was an "investment club" even though Bank "policy [did] not permit investment club accounts," and that the Bank knew that the fraudster was not independently wealthy.  *Lawrence*, 2010 WL 3467501, at *4.

The district court granted the Bank's motion to dismiss, holding that while the Bank may have had a "'general awareness' of certain pieces of the . . . puzzle," the allegations did not "give rise to a plausible inference that [the Bank] had put the puzzle together, or even that it had enough of the pieces to do so." *Id.*  On appeal, the Eleventh Circuit affirmed.  "Although Plaintiffs alleged the transactions were atypical and therefore Bank of America should have known of the Ponzi scheme, such allegations are insufficient under Florida law to trigger liability." *Lawrence*, 455 F. App'x at 907.  Plaintiffs' Amended Complaint here "falls into the precise trap described in *Lawrence*.  [They] allege[] a multitude of atypical transactions and procedural oddities . . . fall[ing] short of raising a plausible inference that [the Bank] actually knew that [the Individual Defendants were] engaging in fraudulent activity." *Perlman*, 559 F. App'x at 993; *see Daccache v. Quiros*, 2018 WL 2248409, at *12 (S.D. Fla. May 15, 2018) (the "commingling of . . . funds and transfers" are "red flags," and "red flags do not amount to actual knowledge").

Similarly, in *Wiand*, this court dismissed aiding and abetting fraud and fiduciary duty claims against Wells Fargo where there were similar "red flag" allegations to those here.  There, the plaintiff alleged that (i) the bank's customer opened accounts using inaccurate information; (ii) the customer's activity reflected "unusual trends and patterns of transfers"; (iii) the customer initiated transfers to commingle large amounts of money between multiple individual and business accounts; (iv) the customer's transactions triggered the bank's fraud alert system; and (v) the private banking group received "reports" alerting them to over 200 transactions.  938 F. Supp. 2d at 1245-46 (alterations omitted).  The court held that these allegations were "no more than 'red flags'" and were therefore insufficient to allege actual knowledge, even though the allegations gave "rise to the presumption that the bank *should have known* about the Ponzi

scheme." *Id.* at 1244, 46 ("[E]vidence establishing negligence, i.e., that a bank 'should have known,' will not suffice.").

*Lawrence* and *Wiand* are not alone.  There are several cases dismissing claims for aiding and abetting liability where the Plaintiff has not alleged actual knowledge.[2]  This case is no different.  Notwithstanding their rhetoric, Plaintiffs do no more than allege atypical business transactions that might have put Bank of America on notice that something was amiss in the accounts.  But Plaintiffs do not allege "facts demonstrating that the bank had 'actual knowledge' of the" Individual Defendants' fraud.  That failure is fatal to Plaintiffs' Amended Complaint.

> 2.    *Plaintiffs' new allegations do not establish actual knowledge.*

Perhaps realizing the insufficiency of their allegations, Plaintiffs' Amended Complaint contains two new factual allegations.  Both are insufficient to establish actual knowledge.  First, Plaintiffs allege that Derline Cunningham, a branch employee, had a close relationship with Parris and Santillo, accepted a personal loan from them in violation of numerous Bank of America policies, and followed them to another banking institution when Bank of America closed their accounts (AC ¶¶ 105-08; 112).  These allegations do not give rise to a strong

---

[2] *See, e.g.*, *Lamm v. v. State Street Bank & Trust*, 889 F. Supp. 2d 1321, 1325 (S.D. Fla. 2012) (dismissing aiding and abetting claim where plaintiffs alleged State Street (i) accepted fraudulent promissory notes; (ii) disbursed funds to purchase securities without timely receipt of stock certificates in exchange; (iii) disbursed funds to other, unknown accounts without receipt of any securities in exchange; (iv) reported false CUSIP numbers on plaintiff's monthly account statements; (v) reported inaccurate, inflated, or false market values for the assets held in plaintiff's accounts; (vi) charged excessive custodial fees based on the inaccurate, inflated, or false market values; (vii) failed to perform the auditing, reporting, and custodial duties required of IRA custodians; and (viii) otherwise failed to notify plaintiff and the SEC of the "obvious fraud"); *Lawrence*, 2010 WL 3467501, at *4 (dismissing aiding and abetting fraud claim where plaintiffs alleged that fraudsters (i) had accounts at Bank of America; (ii) made "exceptionally large deposits"; (iii) BoA representatives presumably became familiar with the fraudsters; (iv) fraudsters informed BoA that it was an "investment club" but BoA did not allow investment clubs; (v) BoA allowed fraudsters to transfer money to other accounts at BoA and elsewhere and to spend money that had been deposited in their accounts; (vi) fraudsters were not independently wealthy; and (vii) fraudsters engaged in certain "atypical business transactions"); *Groom*, 2012 WL 50250, at *1, 3 (dismissing aiding and abetting fraud claim based on allegations that Bank of America "deposit[ed] vast sums of money," "engaged in atypical and irregular banking practices and failed to follow their own internal procedures"); *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. at 773 (dismissing aiding and abetting claim against bank where plaintiffs alleged that accounts were funded by "phony" sources).

inference of actual knowledge of the Individual Defendants' Ponzi scheme.  Tellingly, Plaintiffs

do not even allege that Cunningham knew the Individual Defendants were conducting a Ponzi

scheme.  Plaintiffs simply allege that Cunningham had a "close relationship" (in Plaintiffs'

words) with Parris and Santillo (*id.* ¶ 5) and that when she was "dealing with . . . financial

difficulties" in 2015, they "loaned" her money that they never expected to be repaid.  (*Id.* ¶¶ 105-

06.)  Plaintiffs infer that the "loan" was intended to "compensate [Cunningham] for her

assistance," but they do not allege how Cunningham (or anyone at the Bank) assisted the

fraudulent scheme or whether Cunningham even knew what she was "assisting."  Absent such

allegations, the "loan" and Cunningham's subsequent departure from the Bank suggest nothing

but a close relationship between an employee and her customers. [3]  "Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'"  *Wiand*, 938 F. Supp. 2d at 1243 (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). [4]

---

[3] This case stands in stark contrast to *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1096 (11th Cir. 2017) where the Eleventh Circuit allowed a plaintiff to amend his complaint for aiding and abetting liability against JPMorgan Chase.  There, Plaintiff alleged that a bank employee opened an escrow account for the fraudster even though he had not complied with escrow account opening requirements, wrote a letter on bank letterhead overstating the balance of the escrow account by nearly a million dollars, and accepted $100,000 in a *quid pro quo* arrangement. In *Chang*, unlike here, Plaintiffs pleaded numerous overt actions that created a strong inference that the employee knew the fraudster was engaged in active misappropriation.  *Id.*  Moreover, unlike here, the *Chang* payment allegations were not pled on information and belief.  Rather plaintiff alleged with particularity that the fraudster "told an associate that he had loaned a Bank employee $100,000" and that he "did not pay [her] directly" but "transferred $100,000 from an account with the Bank to the bank account of an entity [that the employee] controlled."  *Chang v. JPMorgan Chase Bank, N.A.*, 841 F.3d 914, 919 (11th Cir. 2016), *opinion vacated and superseded on reh'g*, 845 F.3d 1087 (11th Cir. 2017).

[4] Even if Plaintiffs had sufficiently alleged that Cunningham had actual knowledge of and substantially assisted the Individual Defendants' fraud, that knowledge and assistance would not be attributable to Bank of America.  Under Florida law, "an agent's knowledge will be imputed to the principal only unless the agent's interest is 'entirely adverse' to the principal's interest, meaning the 'actions must neither be intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation."  *Chang*, 845 F.3d at 1096 (citation omitted).  Cunningham clearly acted in her personal interest when she accepted a loan to address her personal financial trouble, and Plaintiffs do not allege that the Bank reaped any benefit whatsoever from Cunningham's alleged agreement, in return for her loan, to keep the Individual Defendants' accounts open.  (AC ¶ 159(d).)  Her 2016 departure to follow the Individual Defendants' accounts to a new bank is further evidence that she was not acting in any way to support Bank of America's interests.

Plaintiffs' Amended Complaint also includes a series of allegations about a 2014 investigation into the Individual Defendants' accounts.  During the investigation, the Bank allegedly questioned Parris and Santillo "regarding the unusual nature of the account openings, the unusually large quantity of account openings, and the atypical nature and amount of the transfers being processed through the First Nationle accounts." (*See* AC ¶ 15.)  Plaintiffs allege that Bank of America gained "specific knowledge of the nature of the Individual Defendants' scheme" through that questioning, but they provide no factual basis whatsoever for that unsupported conclusion.  (*Id.*)

Plaintiffs' allegations fall far short of investigation-related allegations deemed sufficient in other aiding-and-abetting-fraud cases in this Circuit.  In *Perlman*, 559 F. App'x at 994-95, for example, Plaintiffs sought to amend their complaint to add allegations based on testimony from Wells Fargo's financial crimes investigator stating that she had conducted an investigation into counterfeit checks and "concluded that there was unusual activity occurring in those accounts such that it 'raise[d] the hair on the back of your neck.'" *Id.* (alterations in original).  The investigator further testified that she determined it necessary to contact the Florida Department of Law Enforcement and conferred with an Internal Revenue Service agent on the Money Laundering Task Force.  *Id.*  Moreover, she testified that Wells Fargo's practice was to close accounts with "confirmed questionable activity" within 30 days, but for whatever reason, the accounts remained open for three months.  *Id.*  The court permitted Plaintiffs to amend their complaint, finding that the testimony supported a plausible inference that Wells Fargo gained actual knowledge of fraud during its investigation.  *Id.* at 996.

*Perlman* stands in stark contrast to the allegations in the Amended Complaint.  Here, Plaintiffs merely allege that an investigation occurred that did not result in any action.  (AC ¶

14

17.)  That allegation does not plausibly support an inference that Bank of America knew that

illegal activity was in progress; in fact, it suggests just the opposite.  The extensive precedent of

this Circuit would be turned on its head if the mere allegation that a bank conducted an

investigation was sufficient to establish actual knowledge.  The plausibility standard "asks for

more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  Thus, absent factual allegations that the Bank's investigation led to actual

knowledge of fraud, Plaintiffs' Amended Complaint is subject to dismissal.

3.      *Plaintiffs' allegations of actual knowledge lack sufficient particularity.*

Finally, Plaintiffs' aiding and abetting fraud claim fails because it lacks the particularity

required by Federal Rule of Civil Procedure 9(b).  To state a claim for aiding and abetting fraud,

a plaintiff must plead with specificity, stating the circumstances constituting the wrong in detail.

*In re Palm Beach Fin. Partners, L.P.*, 488 B.R. at 772 ("Rule 9(b)'s heightened pleading

standard applies to fraud claims, including claims for aiding and abetting fraud."); *Lamm*, 889 F.

Supp. 2d at 1326 (applying Rule 9(b) in aiding and abetting fraud analysis).  Plaintiffs' aiding

and abetting fraud claim relies heavily on information and belief allegations, contrary to Rule

9(b)'s heightened pleading requirement.  (*See* AC ¶¶ 18, 106, 108, 159(d), 170(e).)  A plaintiff

may only rely on information and belief pleading for a fraud claim if that plaintiff

"accompany[ies] [those allegations with] a statement of the facts on which the belief is founded."

*In re Palm Beach Fin. Partners, L.P.*, 488 B.R. at 767.  Here, Plaintiffs provide no detail about

the basis for their information and belief allegations.

In addition, Plaintiffs rely on precisely the type of pleading that other courts in this

Circuit have prohibited: "conclusory allegations, unwarranted factual deductions or legal

conclusions masquerading as facts[.]"  *See Davila*, 326 F.3d at 1185.  Such allegations "will not

prevent dismissal."  *Id.*  For example, Plaintiffs allege that Bank of America "knew [that investor

15

funds] were stolen . . . to fund the Individual Defendants' lavish lifestyles," (AC ¶ 158(c)), had

"knowledge that the other Defendants were breaching the [] duties owed to Plaintiffs and the

Class," (*id.* ¶ 164), "disregarded specific knowledge of wrongful conduct," (*id.* ¶ 170(d)), and

"acquired knowledge that the Individual Defendants were engaging in fraudulent activity," (*id.* ¶

14).  But such conclusory, generalized allegations are insufficient and require dismissal.  *Lamm*,

889 F. Supp. 2d at 1332 ("Conclusory statements that a defendant 'actually knew' [are]

insufficient to support an aiding and abetting claim where the facts in the complaint only suggest

that the defendant 'should have known that something was amiss.'") (alterations in original);

*Platinum Estates, Inc. v. TD Bank, N.A.*, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012)

("conclusory statement that a defendant 'actually knew' [is] insufficient to support an aiding and

abetting claim where the facts in the complaint only suggest[ ] that the defendant 'should have

known that something was amiss'") (citation omitted).

> **B.     Plaintiffs' Aiding and Abetting Claims Fail Because They Do Not Allege That Bank of America Substantially Assisted the Commission of the Underlying Fraud.**

There is a separate and independent reason to dismiss Plaintiffs' aiding and abetting

claims: Plaintiffs do not sufficiently allege that Bank of America substantially assisted the

Individual Defendants' Ponzi scheme.  "Substantial assistance occurs when a defendant

affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the

breach to occur."  *Groom*, 2012 WL 50250, at *4 (citation omitted).

Plaintiffs' allegations of 'substantial assistance' describe only routine banking services—

Bank of America "implemented" wire transfers (AC ¶ 14), "participat[ed] in hundreds of

transactions" (*id.* ¶ 159(a)), "released monies to the personal accounts of the other Defendants"

(*id.* ¶ 159(a)), and "purported to hold the funds in a secure manner" (*id.* ¶ 159(b)).  Yet courts

consistently hold that providing routine banking services does not constitute substantial

assistance.  *See Groom*, 2012 WL 50250, at *4 ("[P]ermit[ing] a customer to engage in

suspicious transactions . . . fails to establish substantial assistance."); *Richter*, 2015 WL 163086,

at *4 ("Wells Fargo did not provide substantial assistance to the conversion by allowing Fuchs to

access the investor funds she had previously transferred to her Personal Accounts."); *Lawrence*,

2010 WL 3467501, at *4-5 (holding "conclusory allegation that BoA permitted [Ponzi schemers]

to 'engage in atypical' or 'dubious and suspicious' transactions without reporting them to the

proper authorities" insufficient to establish substantial assistance (citations omitted)).

     To the extent Plaintiffs are asserting liability based on the Bank's failure to act, such

allegations are also insufficient.  *See Richter v. Wells Fargo Bank NA*, 2015 WL 163086, at *4

(M.D. Fla. Jan. 13, 2015) (a bank's "inaction would not support a determination that [the bank]

provided substantial assistance").  Plaintiffs allege that the Bank "failed to report obvious

suspicious activity," (AC ¶ 124), "could have closed the accounts and suspended further

transactions" (*id.* ¶ 129), "failed to adhere to regulatory guidance," (*id.* ¶ 117), "allowed the

Individual Defendants to continue processing transactions through their accounts, and did

nothing to prohibit or deter their wrongdoing" (*id.* ¶ 17).  But it is axiomatic that a Bank does not

have a duty to investigate its customers' transactions.  *See Lawrence*, 455 Fed. App'x at 907

("Florida law does not require banking institutions to investigate transactions."); *Moecker v.

Bank of Am., N.A.*, 2013 WL 12159056, at *7 (M.D. Fla. Oct. 21, 2013) (same); *Lamm*, 889 F.

Supp. 2d at 1333 ("the substantial assistance prong cannot be established where, as here, State

Street had no duty to disclose the alleged irregularities in the transactions"); *accord Freeman v.

Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 549 (Fla. Dist. Ct. App. 2003) (holding that banks

are not required to scrutinize their customer's banking activities).  Indeed, a bank "has the right

to assume that individuals who have the legal authority to handle the entity's accounts do not

misuse the entity's funds." *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205

(11th Cir. 2003).  Absent allegations that Bank of America took affirmative steps to help the

Individual Defendants perpetrate a fraud, Plaintiffs failed to plead substantial assistance.

### III.   THE COURT SHOULD DISMISS PLAINTIFFS' COMMON LAW CONSPIRACY CLAIM (COUNT III)

Plaintiffs' claim for common law conspiracy is similarly deficient.  To state a claim for

civil conspiracy, Plaintiffs must make "clear, positive, and specific allegations" that: (1) Bank of

America entered into an agreement with at least one other party; (2) the agreement was to

commit an unlawful act; (3) Bank of America committed an overt act in pursuance of the

conspiracy; and (4) as a result of the acts done under the conspiracy, the plaintiffs suffered

damages.  *See Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla.

Dist. Ct. App. 2012) (dismissing for failure to adequately plead civil conspiracy); *see also Am.*

*United Life Ins. Co.*, 480 F.3d at 1067 (same).  Further, a "civil conspiracy claim is not an

independent cause of action in Florida." *Behrman v. Allstate Life Ins. Co.*, 178 F. App'x 862,

863 (11th Cir. 2006) (per curiam).  A plaintiff must allege a conspiracy to commit some specific

tort.  Here, Plaintiffs' conspiracy claim fails for three independent reasons: (1) Plaintiffs do not

allege the tort that Bank of America is supposed to have conspired to commit; (2) Plaintiffs do

not allege that Bank of America entered into any agreement to commit an underlying tort; and

(3) Plaintiffs do not allege that Bank of America committed an overt act in furtherance of an

underlying tort.

### A.   Plaintiffs' Civil Conspiracy Claim Fails Because They Do Not Identify an Underlying Tort That Bank of America Conspired to Commit.

Plaintiffs do not identify the underlying tort that Bank of America is alleged to have

conspired to commit.  Instead, Plaintiffs allege only that the defendants, including Bank of

America, conspired to commit "wrongful acts," (*see* AC ¶¶ 168-69), or "specific misconduct,"

(*id.* ¶ 172).  Because committing "wrongful acts" or "specific misconduct" is not an independent tort, Plaintiffs have not alleged the requisite underlying tort required to plead conspiracy.  *See Behrman*, 178 F. App'x at 863; *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 841 (Bankr. M.D. Fla. 2011) (dismissing civil conspiracy claim where "Plaintiff has not alleged or identified a specific underlying tort in connection with the conspiracy claim").

At most, Plaintiffs allege that Bank of America "assist[ed] in keeping the Individual Defendants' accounts open despite the suspicious activity being conducted."  (AC ¶ 170(e).) This allegation stops short of alleging that Bank of America agreed to defraud Plaintiffs or breach Individual Defendants' fiduciary duty towards them.  "[K]eeping the Individual Defendants' accounts open despite . . . suspicious activity" (*id.*) is not itself illegal under Florida law, *see supra* pp. 9-12, and at most, this allegation merely restates Plaintiffs' aiding and abetting claim.  But aiding and abetting is not a separate cause of action; it is a form of vicarious liability and so therefore cannot serve as an underlying tort.  *Cf. McCants v. State*, 587 So. 2d 673, 673 (Fla. Dist Ct. App. 1991) ("[A] conspiracy may not be inferred solely from conduct which merely aids and abets an offense.").  In any event, Plaintiffs' aiding and abetting claims are meritless, *see supra* pp. 7-18, and so any conspiracy claim based on them is similarly deficient.  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007) ("[A] claim that is found not to be actionable cannot serve as the basis for a conspiracy claim.")

**B.    Plaintiffs' Civil Conspiracy Claim Fails Because They Do Not Allege That Bank of America Entered into an Agreement in Furtherance of an Underlying Tort.**

Plaintiffs' civil conspiracy claim separately fails because Plaintiffs do not adequately allege the existence of an agreement between the Bank and a co-conspirator.  "The key to showing the existence of a conspiracy is that there must be a meeting of two independent minds intent on one common purpose."  *Regions Bank v. Kaplan*, 2014 WL 5088889, at *5 (M.D. Fla.

19

Sept. 30, 2014).  And when a complaint "never alleged that there was an agreement, it has failed

to allege sufficient facts with respect to the conspiracy count."  *Russo v. Fink*, 87 So. 3d 815, 819

(Fla. Dist. Ct. App. 2012); *see also Gellert v. Richardson*, 1995 WL 856715, at *2 (M.D. Fla.

July 24, 1995) (dismissing conspiracy claim where plaintiff "has not alleged the existence of an

agreement" between the defendants).

 Here, Plaintiffs' sole allegation of agreement between Bank of America and the

Individual Defendants is that a Bank of America employee, Cunningham, "agreed to assist in

keeping the Individual Defendants' accounts open despite the suspicious activity being

conducted."  (AC ¶ 170(e).)  But "conclusory allegations of agreement do not establish civil

conspiracy."  *See Honig v. Kornfeld*, 2018 WL 4502174, at *15 (S.D. Fla. Aug. 20, 2018).  On

the contrary, under Rule 9(b), "where a conspiracy claim alleges that two or more parties agreed

to commit fraud, the plaintiff must also plead this act with specificity."  *Am. United Life Ins. Co.*,

480 F.3d at 1065; *see also Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 2015 WL

12862724, at *5 (S.D. Fla. Aug. 20, 2015) (stating same).  As one court in the Eleventh Circuit

explained,

> "The . . . pleading insufficiency is even more egregious to the
> extent Plaintiffs intended to support their civil conspiracy claim by
> a general suggestion of fraud, thereby implicating Rule 9.
> Plaintiffs have failed to provide any detail at all as to the alleged
> conspiracy, let alone the who, what, when, where and how of
> Defendants' alleged agreement.  Certainly to satisfy the heightened
> pleading standard for conspiracy claims based in fraud, Plaintiffs
> must at least show some evidence of agreement between the
> defendants."

*Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1320 (S.D. Fla. 2014) (internal quotation

and citation omitted).  Here, Plaintiffs have not identified the person or people with whom

Cunningham allegedly made her agreement, nor do they allege the "when, where and how" of any such alleged agreement.

Even if the Amended Complaint alleged sufficient details regarding an alleged agreement between Cunningham and the Individual Defendants—and it does not—that agreement cannot be imputed to Bank of America because Cunningham was acting outside the scope of her employment.  "An employee's conduct is within the scope of his employment when it (1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master." *Hammer v. Lee Memorial Health System*, 2018 WL 3707832, *4 (M.D. Fla. Aug. 3, 2018) (internal quotations omitted).  The Amended Complaint makes clear that Cunningham was motivated by individual interests.  Cunningham accepted the loan in order to address her own "financial difficulties."  (AC ¶ 105.)  Plaintiffs admit that the loan to Cunningham was never disclosed to the Bank and "violated internal Bank policies and procedures regarding conflicts of interest, as well as the Bank's code of ethics" designed "to ensure that Cunningham, as a Bank representative, put the interests of the Bank ahead of any personal interests."  (AC ¶ 107.)  Indeed, Cunningham herself left Bank of America when the Individual Defendants' accounts were closed and followed them to their new bank.  (*Id.* ¶ 112.)  Far from acting with a "purpose to serve" Bank of America, the allegations suggest that any agreement Cunningham struck was solely in her own interest.

## C.  Plaintiffs' Civil Conspiracy Claim Fails Because They Do Not Allege That Bank of America Committed an Overt Act in Furtherance of an Underlying Tort.

To state a claim for civil conspiracy, a complaint must include allegations of "an overt act in furtherance of [the defendant's] illegal objective."  *Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1300 (M.D. Fla. 2002) (dismissing complaint for failure to plead an overt

act).  The Individual Defendants—and not Bank of America—are responsible for all of the overt acts actually identified in the Complaint.  (*See supra* pp. 16-18; AC ¶¶ 76-89.)  At most, Plaintiffs allege that Bank of America "enabled" the Individual Defendants' fraud by failing to recognize red flags.  (*Id.* ¶ 122.)  Similarly, Plaintiffs allege that Cunningham merely kept the Individual Defendants' accounts open "despite the suspicious activity being conducted."  (*Id.* ¶ 170(e).)  But failure to act is not an overt act sufficient to state a cause of action for conspiracy. *See McElrath v. ABN AMRO Mortg. Grp., Inc.*, 2012 WL 463893, at *6 (S.D. Fla. Feb. 13, 2012) (allegations that bank allowed routine transactions to occur and was "in active complicity" with co-conspirators failed to allege overt act); *accord Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321, 339-40 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016) (holding that "the 'overt act' typically must be an affirmative act; mere inaction is insufficient," and collecting cases in support).

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against Bank of America should be dismissed with prejudice.

Dated:  October 26, 2018
          New York, New York

By:    /s/ Pamela A. Miller

O'MELVENY & MYERS LLP
Pamela A. Miller (*pro hac vice*)
pmiller@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for Bank of America, N.A.*

LIEBLER, GONZALEZ & PORTUONDO
Mary J. Walter
Florida Bar No: 45162
mjw@lgplaw.com
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Tel: (305) 379-0400
Fax: (305) 379-9626

*Attorneys for Bank of America, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 26, 2018, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Pamela A. Miller<br>
Pamela A. Miller

Service List:

George Franjola, Esq.
Gilligan, Gooding & Franjola, P.A.
1531 SE 36th Ave.
Ocala, FL 34471
gfranjola@ocalalaw.com

*Counsel for Mary Beth Heinert & Richard H. Schultz, Jr.*

Vincent A. Citro, Esq.
Law Offices of Horwitz & Citro, P.A.
17 East Pine Streetw
Orlando, FL 32801
vince@horwitzcitrolaw.com

*Counsel for Mary Beth Heinert & Richard H. Schultz, Jr.*

Harley S. Tropin, Esq.
Robert J. Neary, Esq
Tai J. Lifshitz, Esq.
Kozyak, Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
hst@kttlaw.com
sf@kttlaw.com
tjl@kttlaw.com
rn@kttlaw.com
nm@kttlaw.com

*Counsel for Mary Beth Heinert & Richard H. Schultz, Jr.*

1