UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(*Ocala Division*)

CASE NO.  5:18-cv-00324-PGB-PRL

**CLASS ACTION**

MARY BETH HEINERT and RICHARD H.
SCHULTZ, JR., on behalf of themselves and
all others similarly situated,

Plaintiffs,

v.

BANK OF AMERICA, N.A., PERRY
SANTILLO, CHRISTOPHER PARRIS,
PAUL ANTHONY LAROCCO, JOHN
PICCARRETO, and THOMAS BRENNER,

Defendants.

**DEFENDANT BANK OF AMERICA, N.A.'S
MOTION TO EXTEND THE LIMITED STAY OF DISCOVERY
PENDING DETERMINATION OF DEFENDANT'S MOTION TO DISMISS**

Defendant Bank of America, N.A. ("Bank of America") respectfully files this Motion to

Extend the Stay of Discovery Pending Determination of Bank of America's Motion to Dismiss the

Plaintiffs' Amended Complaint and states as follows:

**INTRODUCTION**

On August 28, 2018, this Court stayed discovery in this case until October 31, 2018,

concluding that Bank of America's then-pending Motion to Dismiss "raise[d] issues about the

sufficiency of each of Plaintiffs' claims against Defendant Bank of America" and "[i]f granted,

. . . would dispose of all claims against Defendant Bank of America." (*See* ECF 44 at 2-3.) Rather

than responding to that motion and allowing this Court to expeditiously adjudicate the sufficiency

1

of their claims, Plaintiffs filed an Amended Complaint adding several new allegations.  As Bank

of America explains in a renewed Motion to Dismiss, filed concurrently with this motion, none of

these new allegations alleviates the legal flaws in Plaintiffs' claims.  They do, however, suggest

both that Plaintiffs were able to uncover a basis for additional factual allegations notwithstanding

the discovery stay and that Plaintiffs will seek to explore these new allegations with even broader

amended discovery requests to Bank of America.  The need for this discovery would still be largely

eliminated, or at least significantly reduced, should Bank of America prevail on its Motion to

Dismiss, and Plaintiffs' failure to either serve or secure a default judgment against the remaining

defendants suggests that they still intend to shift all party discovery onto Bank of America,

notwithstanding the fact that Bank of America's co-defendants agreed to expedited discovery in a

related SEC federal case against them (but not against Bank of America) based on similar

allegations that is currently pending in New York.

This Motion to Stay Discovery is narrower than the one that Bank of America filed in

August.  In exchange for receiving additional time to file its Motion to Dismiss Plaintiffs'

Amended Complaint, Bank of America agreed not to seek a stay of Initial Disclosures or third-

party discovery.  Under the unique circumstances presented in this case, Bank of America

respectfully requests that this Court exercise its discretion to continue the limited stay of discovery

until the Court resolves Bank of America's Motion to Dismiss the Amended Complaint.

## FACTUAL BACKGROUND

1.      On June 18, 2018, the U.S. Securities and Exchange Commission ("SEC") filed a

civil action in U.S. District Court for the Southern District of New York, alleging that Perry

Santillo, Christopher Parris, Paul Anthony Larocco, John Piccarreto, and Thomas Brenner

(collectively, the "Individual Defendants") defrauded investors through a Ponzi scheme.  *See SEC v. Santillo*, Case No. 1:18-cv-05491-JGK, Dkt. 1 (S.D.N.Y. June 19, 2018) (the "SEC Action").[1] Bank of America is not a party to the SEC Action.  *See id.*

2.      The Individual Defendants (with the exception of Parris) have all appeared in the SEC Action.  *See Santillo* Dkts. 8, 34, 45, 59.  These Individual Defendants (also with the exception of Parris) each agreed to provide responses and objections to the SEC's discovery requests by July 20, 2018, and to be deposed "as soon as reasonably practicable" thereafter.  *See Santillo* Dkt. 15 at 6; Dkt. 16 at 5; Dkt. 18 at 5; Dkt. 19 at 5.  Each of these Individual Defendants (again with the exception of Parris) filed Answers.  *Id.* Dkts. 51-53, 59.

3.      On June 23, 2018, Plaintiffs Mary Beth Heinert and Richard H. Schultz, Jr., filed this copycat action making largely the same allegations against the Individual Defendants and adding claims against Bank of America for allegedly conspiring with the Individual Defendants and aiding and abetting their fraud and breach of fiduciary duty.  (*See* ECF 1.)

4.      The clerk has entered defaults against three Individual Defendants in this action: Brenner, Santillo, and Picaretto.  (*See* ECF 26, 27, 35.)  Neither Parris nor Larocco has appeared, despite the fact that at least one of them has been served.  (*See* ECF 22.)

5.      On July 31, 2018, Bank of America filed its first Motion to Dismiss on the grounds that Plaintiffs failed to adequately allege that Bank of America knew about or substantially assisted

---

[1] Bank of America respectfully requests that the Court take judicial notice of the filings in the SEC Action.  *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (recognizing that a court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings).

3

the Individual Defendants' alleged fraud or breach of fiduciary duty, and that Plaintiffs did not adequately plead the elements of conspiracy.  (*See* ECF 33 at 6-17.)

6.       Also on July 31, 2018, Bank of America and Plaintiffs conducted their Case Management Conference as required by Federal Rule of Civil Procedure 26(f).  (*See* Declaration of Pamela A. Miller in Support of Bank of America's Motion to Extend the Stay of Discovery ¶ 2 ("Miller Decl.").)  Bank of America advised Plaintiffs that it would be filing a substantial motion to dismiss later that day and requested that Plaintiffs agree to a temporary stay of discovery until the Court adjudicated the motion to dismiss.  Defendants did not agree to a stay, but promised that any discovery requests would be "reasonable."  (*See* Miller Decl. ¶ 3.)

7.       Instead, several hours later, Plaintiffs served 5 interrogatories and 50 requests for production (including subparts).  (*See* Miller Decl. Ex. 1 ("ROG"); *id.* Ex. 2 ("RFP").)

8.       The interrogatories require Bank of America to identify not only accounts belonging to any of the Individual Defendants, but also accounts related to approximately 35 named business entities, several unnamed business entities, and any accounts "related" to any of those business entities.  (*See* ROG Instructions 2-9, ROG No. 2.)  These "include but are not limited to" 100 accounts at issue in the SEC Action.  (*Compare* ROG Ex. A *with Santillo* Dkt. 6 Sched. A (including same accounts).)  The interrogatories also require Bank of America to identify all individuals who may have knowledge about "matters concerning" those accounts as well as the matters alleged in the Complaint.  (ROG No. 3.)

9.       The requests for production go beyond even the interrogatories, requesting documents dating back to 2011 in the following categories:

a.  **Detailed information about the Individual Defendants' businesses:** These requests seek the offering materials and business plans of the Individual Defendants' companies, account opening documents, and documents showing "***all*** account activity," for the accounts Bank of America identified in its interrogatories. (RFPs Nos. 3, 4, 13) (emphasis added).

b.  **Bank of America's monitoring of the Individual Defendants:** These requests seek fraud detection or anti-money laundering alerts and formal investigations or other monitoring or review by Bank of America or governmental entities of any Individual Defendant or their related companies (RFP Nos. 1, 7-10, 20-21); "***all*** emails from any email account" that mention the Individual Defendants and their related companies (RFP No. 13(a)-(f)) (emphasis added); meetings or other communications relating to the Individual Defendants and their related companies (RFP Nos. 14-17); and "employee records" of ***any*** Bank of America employee with ***any*** "involvement" in an account or any "business relationship" with any Individual Defendant (RFP No. 12).

c.  **Bank of America's suspicious account activity policies and procedures:** These requests seek documents identifying numerous Bank of America policies relating both to the relevant accounts (RFP No. 5), as well as to all aspects of suspicious account monitoring and any related government investigations (RFP Nos. 2, 6).

d.  **Bank of America's general business records:** These requests seek information regarding Bank of America's revenue from the Individual Defendants or their businesses (RFP Nos. 18-19); organizational charts (RFP No. 25); and

indemnification, joint defense, and insurance that may be implicated by this lawsuit (RFP Nos. 22-24).

e. **Information relating to Class Plaintiffs:** These requests seek communications between Bank of America and the class members (RFP No. 11), but also ***all*** emails that include any of class members (RFP No. 13(g)).

10. Responses and objections to Plaintiffs' discovery demands were originally due on August 30, 2018. *See* Fed. R. Civ. P. 34(b)(2)(A).

11. On August 8, 2018, Plaintiffs filed an unopposed motion seeking to adjourn Plaintiffs' deadline to file a response to Bank of America's Motion to Dismiss or an amended pleading until September 20, 2018. (*See* ECF 37.)

12. On August 9, 2018, Plaintiffs served document subpoenas on four third parties, including on two other banks. (*See* Miller Decl. ¶ 11; *id.* Ex. 3.) The document requests included in the subpoenas were verbatim subsets of the RFPs made on Bank of America. (*Id.*)

13. On August 14, 2018, the parties filed a Case Management Report ("CMR"). (*See* ECF 39.)

14. Also on August 14, 2018, Bank of America filed a motion for a limited stay of discovery pending determination of its then-pending motion to dismiss. (*See* ECF 40.)

15. On August 15, 2018, the Court entered a *sua sponte* order, waiving the 90-day deadline for Plaintiffs to file a class certification motion under Federal Rule of Civil Procedure 23(c)(1), striking the parties' CMR, and requiring that the parties file a new one including a deadline for (1) disclosure of expert reports – class action, plaintiff and defendant; (2) discovery –

class action; (3) motion for class certification; (4) response to motion for class certification; and (5) reply to motion for class certification.  (*See* ECF 41.)

16.     On August 28, the Court granted in part Bank of America's motion for a limited stay of discovery through October 31, 2018.  The Court explained that "[a] complaint does require more than vague or conclusory allegations as to a defendant, and in the case of fraud, a heightened pleading standard controls."  (Dkt. 44 at 3.)  After reviewing the motion to dismiss and complaint, the Court found that "Defendant's position as to the deficiencies of the complaint may have merit," and so "the interests of justice and efficiency weigh in favor of a limited stay of discovery."  (*Id.*)

17.     On September 20, 2018, Plaintiffs filed an Amended Complaint.  (*See* ECF 45.) This Amended Complaint is largely identical to the earlier complaint, but as a redline comparison to the original Complaint shows, it makes two primary additional allegations:

- Bank of America conducted an investigation into some of the accounts of the Individual Defendants, including questioning Parris regarding "the unusual nature of the account openings, the unusual quantity of account openings, and the atypical nature and amount of the transfers" (*See* Miller Decl. Ex. 4 ¶¶ 100-103).

- A Bank of America employee, Derline Cunningham, accepted a loan from the Individual Defendants, and followed them to another bank after Bank of America terminated its relationship with Plaintiffs. (*Id.* ¶¶ 105-112). Plaintiff admits that Cunningham "violated internal Bank policies and procedures regarding conflicts of interest, as well as the Bank's code of ethics" because Cunningham never disclosed this loan to Bank of America, (*Id.* ¶¶ 107), but nevertheless allege that Cunningham "agreed to assist in keeping the Individual Defendants' accounts open despite the

[alleged] suspicious activity" that Plaintiffs identified elsewhere in the Amended Complaint. (*Id.* ¶ 170e.)

18.     On October 1, 2018, this Court granted Bank of America's unopposed motion for an extension of time to respond to the Amended Complaint to October 26, 2018 (ECF 48).  As a condition of consenting to extension request, Plaintiffs required two concessions:  (i) Bank of America had to agree to exchange initial disclosures on October 31, 2018; and (ii) Bank of America had to limit its stay only to Bank of America (and its current and former employees) and not as to third parties.  (*See* Miller Decl. Ex. 5 at 2.)

19.     Bank of America is moving to dismiss the Amended Complaint (the "MTD" or "Motion to Dismiss") concurrently with this motion.  Plaintiffs' Opposition to the Motion to Dismiss is due November 9, 2018.

## ARGUMENT AND MEMORANDUM OF LAW

As this Court correctly recognized in its earlier order, "[i]t is entirely appropriate for a Court to stay discovery where there is a dispositive motion pending" and "when faced with a motion to dismiss a claim for relief that significantly enlarges the scope of discovery, the district court should rule on the motion before entering discovery orders, if possible."  (Dkt. 44 at 2 (internal quotations and citations omitted)); *see also Grant v. Ocwen Loan Servicing, LLC*, 2016 WL 8997474, at *1 (M.D. Fla. May 10, 2016) (district court "has broad discretion to stay discovery until preliminary questions that may dispose of the case are determined" (internal quotations and citations omitted)).  The Court's order was consistent with well-established precedent in the Eleventh Circuit.  "If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided," and so

"challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367-1368 (11th Cir. 1997); *accord Moore v. Potter*, 141 F. App'x 803, 808 (11th Cir. 2005) ("[A]ny legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible." (internal quotations and citations omitted)).  In determining whether a stay is warranted, the Court takes a "preliminary peek" at the pending motion to determine whether it is meritorious and case-dispositive.  (*See* EF 44 at 2.); *accord McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (granting stay pending resolution of motion to dismiss).  The Court then balances the potential harm resulting from a delay in discovery against the possibility that the dispositive motion will be granted, "weighing the likely costs and burdens of proceeding with discovery." *Id.* (internal quotation marks and citations omitted).  Applying this balancing test, it is appropriate to grant a limited stay of discovery pending resolution of the Motion to Dismiss.

I.    **Bank of America Has Filed a Meritorious Motion to Dismiss That May Resolve This Case**

Bank of America's motion to dismiss Plaintiffs' original complaint already "raise[d] issues about the sufficiency of each of Plaintiffs' [original] claims against" it.  (ECF 44 at 2.)  As its pending Motion to Dismiss explains, Plaintiffs' Amended Complaint still does not adequately allege that Bank of America possessed the level of actual knowledge of the Individual Defendants' alleged misconduct required to sustain Plaintiffs' aiding and abetting claims, or that it substantially assisted the Individual Defendants' alleged misconduct.  (*See* MTD at 8-18.)  Plaintiffs make no materially new allegations regarding substantial assistance, only reiterating that Bank of America and one of its employees kept Individual Defendants' accounts open.  (*See* Miller Decl. Ex. 4

9

¶ 159.)  And while Plaintiffs allege that Bank of America investigated a few of the red flags that they identified earlier, and that a branch employee had a close relationship with the Individual Defendants and accepted money from Individual Defendants in violation of numerous Bank policies, they do not allege that Bank of America in fact discovered the underlying fraud, or that the relevant employee even knew about the underlying misconduct.  (*See* MTD at 13-15.)  Even if she did know about the alleged misconduct, such knowledge cannot be imputed to Bank of America.  (*See id.* at 13 n.4.)

Plaintiffs' conspiracy claim is similarly deficient.  The amended Complaint still fails to identify any underlying tort that Bank of America committed or allege any overt act that Bank of America took in furtherance of the alleged conspiracy.  (*See* MTD at 19; 22.)   And its allegations that a Bank of America employee "agreed to assist in keeping the Individual Defendants' accounts open despite the suspicious activity being conducted" still fails to specifically allege any agreement to commit any underlying wrongdoing under Federal Rule of Civil Procedure 9(b), and suggests that the only employee who allegedly made any agreement at all was acting outside the scope of her employment.  (*See id.* at 20-21.)

Notwithstanding Plaintiffs' additional allegations, therefore, there are still "serious questions" regarding the validity of the Amended Complaint, justifying a stay of discovery.  *See Redford v. Gwinnett Cty. Judicial Circuit*, 350 F. App'x 341, 346 (11th Cir. 2009) (trial court did not abuse discretion staying discovery when "Defendants raised several arguments . . . which, on their face, raised serious questions regarding the viability of [Plaintiff's] complaint"); *see also Grant*, 2016 WL 8997474, at *1 (granting motion to stay pending adjudication of motion to dismiss when "no binding precedent controls the issues" in the motion to dismiss); *Zamber v. Am. Airlines*,

2017 WL 5202748, at *5 (S.D. Fla. Feb. 17, 2017) (granting motion to stay discovery when a pending motion to dismiss "generate[d] a concern that the claims may be legally insufficient," but "could . . . conceivably go either way" (internal quotations and citations omitted)).[2]

## II.   A Temporary Stay Will Not Prejudice Plaintiffs

The limited stay will not prejudice Plaintiffs.  First, Plaintiffs have shown themselves capable of investigating the facts of the case notwithstanding the current stay.  Indeed, they were able to expand the timeframe of the alleged wrongful conduct by an additional six years, allege specific interactions between a particular Bank employee and some of the Individual Defendants, and allege that Bank of America conducted an investigation into the Individual Defendants' business activity.  (*See* Miller Decl. Ex. 4 ¶¶ 8, 99-112.)  As far as Bank of America is aware, all of this new information was gleaned without receiving any response from Plaintiffs' pending third-party discovery requests.  (*See* Miller Decl. ¶ 13.)  Moreover, Bank of America has agreed to exchange initial disclosures on October 31, 2018 (the date the current stay expires) notwithstanding any further discovery stay, and to limit its stay request to Bank of America and its employees or former employees.  *See supra* p. 8.  Third party discovery will allow Plaintiffs to investigate their claims while not significantly burdening Bank of America.

Further, any stay will be brief.  The Motion to Dismiss was filed before the current discovery stay expired.  *Cf. Neal*, 2015 WL 12841062 at *2 (staying discovery even when motion

---

[2] Bank of America's Motion to Dismiss would still completely remove it from the case, also suggesting that a continued stay is appropriate. (*See* ECF 44 at 2-3.)  Additionally, while there are additional defendants, none has appeared to date and the Court has found three in default. (*See supra* p. 3; ECF 19-22, 26, 27, 35.)  As such, resolution of the pending motion will likely resolve the entire action, which mandates in favor of the requested stay.  *See Neal v. Atlas Acquisitions, LLC*, 2015 WL 12841062, at *2 (M.D. Fla. Feb. 24, 2015) (good cause to stay pending resolution of motion to dismiss when motion, if granted, would dispose of case).

filed after initial disclosures, CMR, and six days before the first deposition).  Plaintiffs' counsel

has acknowledged that the Amended Complaint raises the "same legal claims that [were] already

briefed," and so Plaintiffs will likely be able to respond in a timely manner, allowing this Court to

expeditiously decide the Motion to Dismiss.  (*See* Miller Decl. Ex. 5 at 3.)

Finally, it remains unclear whether Plaintiffs will need any discovery at all should Bank of

America be dismissed from the case.  Three Individual Defendants have already defaulted,

meaning that they have admitted the facts alleged in the Complaint as against them.  (*See* ECF 26,

27, 35); *FLCM ACQ VIII, LLC v. Taos Ventures, LLC*, 2014 WL 7009872, at *2 (M.D. Fla. Dec.

11, 2014) (Lammens, M.J.) (holding that a defendant's "default is . . . an admission of the facts

cited in the Complaint" (internal quotations and citations omitted)).  A fourth Individual Defendant

has already missed his deadline to respond to Plaintiffs' Complaint.  (*See* ECF 22.)[3]  For any

defendant who has defaulted, all that is left is for Plaintiffs to prove their damages—proof that is

well within Plaintiffs' knowledge without any need for discovery from Bank of America or anyone

else.  *See FLCM ACQ VIII*, 2014 WL 7009872, at *2-3 (requiring plaintiff to provide

documentation of damages against defaulting defendants).

Plaintiffs may argue that they need discovery from Bank of America with respect to their

class claims against the Individual Defendants.  (*See* RFP Nos. 11, 13(g).)   But the Court has

already adjourned the Local Rules' deadline for Plaintiffs to move for class certification.  (*See*

ECF 41).  *See Tillman v. Ally Financial, Inc.*, 2016 WL 9488774, at *3 (M.D. Fla. Oct. 18, 2016)

---

[3] Plaintiffs have not appeared to seek any default judgment against the remaining Individual
Defendants in the intervening months since the discovery stay, further suggesting that they intend
to rely on Bank of America for nearly all party discovery, and may not further pursue their claims
against the Individual Defendants if Bank of America is dismissed from the case.

(staying discovery when court also extended deadline to move for class certification because stay then caused "little harm" to Plaintiffs).  Moreover, Plaintiffs' requests related to class discovery are particularly burdensome.  Plaintiffs seek Bank of America's communications with all putative class members.  *See supra* p. 6.  But Plaintiffs do not allege that any putative class members are Bank of America customers.  *See id.*  Information providing the identity of such customers would be uniquely within the control of the Individual Defendants and it would be exceedingly difficult—if not impossible—for Bank of America to review its account documents to identify the Individual Defendants' customers, as opposed to vendors or other counterparties.  Expending such resources at such an early stage is particularly burdensome and inappropriate when Plaintiffs assert a nationwide putative class of over 600 people (*see* ECF 44 ¶ 152), and when the class allegations are of such dubious merit.  *See*, *e.g.*, *In re LIBOR-based Financial Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 576-79 (S.D.N.Y. 2018) (denying certification of nationwide class for common law fraud claims based on differences in state law).  In such circumstances, a limited stay is eminently reasonable.  *See Tillman*, 2016 WL 9488774, at *3 (granting motion to stay discovery despite plaintiffs' purported need for discovery to "determine who constitutes the members of the putative class" when Defendants argued that the associated expense was large).

## III.   The Requested Discovery is Burdensome

Notwithstanding Plaintiffs' reassurance that their discovery requests would be "reasonable," they are anything but, and the costs and burdens of proceeding with discovery at this preliminary stage are significant.  As discussed, the requests seek information on at least 100 accounts and require Bank of America to expend resources in identifying additional "related" accounts.  (*See* Miller Decl. ¶ 6.)  Based on an initial investigation, it would take significant

13

employee time simply to identify the "relevant" accounts.  (*See id.*)  After doing so, Bank of America would possibly need to spend hundreds or even thousands of hours collecting responsive documents related to these accounts as sought in Plaintiffs' Requests for Production.  (*See id.* ¶¶ 7-8.)  Bank of America would then need to engage a third-party processor to host the documents, provide a platform on which to review them, and prepare them for production.  (*See id.* ¶ 9).  It would then need to pay for attorneys to review the documents for responsiveness and redact them to protect against the release of personally-identifiable information, as required under both federal and Florida law.  (*See id.*); *see also* 15 U.S.C. § 6803; Fla. Stat. § 501.171.  Plaintiffs' requests for information related to fraud investigations and suspicious account monitoring would take additional time to collect, and to the extent any are identified they will need to be closely reviewed by outside counsel given the federal proscriptions on releasing Suspicious Activity Reports and related information, or even disclosing whether any Reports exist.  (*See* Miller Decl. ¶ 10); *see also* 31 U.S.C. § 5318(g)(2); 31 CFR § 103.18(e)(1).

Other requests are facially burdensome, such as the request that Bank of America collect and search ***every*** email from its more than two hundred thousand employees (and every other email account in its "possession or control") for ***any*** communications with Individual Defendants irrespective of any relation to the allegations in the Complaint (RFP No. 13).  These requests are clearly a fishing expedition, designed to help Plaintiffs' find some suggestion of actual knowledge or conspiracy—facts that are conspicuously absent from the current Complaint.  *See Shannon v. Albertelli Firm, P.C.*, 610 F. App'x 866, 871 (11th Cir. 2011) (barring fishing expedition for facts missing from Complaint).

Indeed, it is likely that Bank of America will need to respond to discovery that is even broader than that described above, since Plaintiffs will very likely serve amended or additional discovery requests on Bank of America in light of their additional allegations. (*See supra* pp. 7-8.) The Individual Defendants have not appeared in this case, and so the entire burden of Plaintiffs' party discovery will likely fall on Bank of America.  This is readily apparent in Plaintiffs' broad requests: several seek from Bank of America information that Plaintiffs cannot obtain from the Individual Defendants such as Plaintiffs request that Bank of America identify any company "related" to the Individual Defendants' companies (ROG No. 2) and provide "***all***" of those companies' "Private Placement Memoranda, business plans, and other offering materials" (RFP No. 15) (emphasis added).  Allowing Plaintiffs to seek expansive discovery from Bank of America and third parties that would be directly available from Individual Defendants imposes considerable costs on the court system and litigants, especially when the Individual Defendants likely have already produced much of the relevant information through expedited discovery in the SEC Action.  *See supra* pp. 2-3; *see also Chudasama*, 123 F.3d at 1368 (cautioning against allowing unmeritorious claim to impose unnecessary discovery costs on litigants and the court system).

Consistent with Eleventh Circuit precedent, Bank of America's obligation to comply with Plaintiff's broad and burdensome discovery requests should be temporarily stayed while this Court considers Bank of America's substantive motion to dismiss.  *See Moore*, 141 F. App'x at 808 ("[A]ny legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible." (internal quotations and citations omitted)).

WHEREFORE, on the basis of the foregoing, Bank of America, N.A. respectfully requests that this Court enter an order staying discovery in this matter until such time as the Court has ruled on the pending Motion to Dismiss, and enter such other and further relief in favor of Bank of America, N.A. deemed just and proper under the circumstances.

### RULE 3.01(G) CERTIFICATION

In compliance with Local Rule 3.01(g), Counsel have conferred regarding this motion and Plaintiffs have indicated that they oppose the relief sought herein.

Respectfully submitted,

Dated: <u>October 26, 2018</u>
      New York, New York

By:    <u>/s/ Pamela A. Miller</u>

O'MELVENY & MYERS LLP
Pamela A. Miller (*pro hac vice*)
pmiller@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for Bank of America, N.A.*

LIEBLER, GONZALEZ & PORTUONDO
Mary J. Walter
Florida Bar No: 45162
mjw@lgplaw.com
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Tel: (305) 379-0400
Fax: (305) 379-9626

*Attorneys for Bank of America, N.A.*

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2018, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Pamela A. Miller

Service List:

George Franjola, Esq.
Gilligan, Gooding & Franjola, P.A.
1531 SE 36th Ave.
Ocala, FL 34471
gfranjola@ocalalaw.com

*Counsel for Mary Beth Heinert & Richard H. Schultz, Jr.*

Vincent A. Citro, Esq.
Law Offices of Horwitz & Citro, P.A.
17 East Pine Streetw
Orlando, FL 32801
vince@horwitzcitrolaw.com

*Counsel for Mary Beth Heinert & Richard H. Schultz, Jr.*

Harley S. Tropin, Esq.
Robert J. Neary, Esq
Tai J. Lifshitz, Esq.
Kozyak, Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
hst@kttlaw.com
sf@kttlaw.com
tjl@kttlaw.com
rn@kttlaw.com
nm@kttlaw.com

*Counsel for Mary Beth Heinert & Richard H. Schultz, Jr.*

1